RECEIVED
JUL 1 9 2005
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

| GERALD L. WILLIAMS | * | CIVIL ACTION NO. 04-1488 |
|---|---|---|
| VERSUS | * | JUDGE MELANÇON |
| COMMISSIONER OF SOCIAL SECURITY | * | MAGISTRATE JUDGE HILL |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Gerald L. Williams, born June 8, 1966, filed an application for a period of disability and disability insurance benefits on February 15, 2002, alleging disability from July 8, 1999 to July 16, 2001,[1] due to a low back injury, right leg pain, hypertension and kidney stones.

## FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is substantial evidence in the record to support the Commissioner's decision of non-disability and that the Commissioner's decision comports with all relevant legal standards. Anthony v.

---

[1] Claimant returned to work on July 16, 2001. (Tr. 13).

Sullivan, 954 F.2d 289, 292 (5th Cir. 1992).

In fulfillment of F.R.Civ.P. 52, I find that the Commissioner's findings and conclusions are supported by substantial evidence, which can be outlined as follows:

**(1) Records from Dr. Roland C. Miller dated July 9 to November 22, 1999.**

Claimant was seen on July 9 after hurting his back at work the previous day. (Tr. 97). On examination, he was able to forward flex/extend and laterally bend close to normal. He had no muscle spasms, a negative straight leg raise, and normal reflexes in the lower extremities. (Tr. 98). He had moderate tenderness to palpation over the lumbar spine, and some hypersensitivity to light touch over the left foot and sole. Dr. Miller's impression was a lumbar sprain and a possible mild contusion to the sciatic nerve, for which he recommended light duty, warm soaks and muscle relaxants for home.

After claimant continued to complain of "pins and needles" radiation on the right side, Dr. Miller recommended an MRI. (Tr. 96). The MRI showed some bulging annulus at L3-L4 and L4-L5 which were "well within normal limits." (Tr. 94-95, 180). There were "absolutely" no disc abnormalities, disc degeneration or nerve root pressure. (Tr. 94). He recommended an EMG/nerve conduction study, and light duty work.   On November 22, Dr. Miller saw claimant for a second opinion regarding Dr. John Cobb's recommendation for a lumbar diskogram. (Tr. 91).

2

Claimant reported that he was having more back and right leg pain since he had started seeing Dr. Cobb. On examination, claimant had no muscle spasm, negative straight leg raising on the left with pain reported at 30 degrees on the right, equal reflexes of the lower extremities, normal deep tendon reflexes, normal muscle mass of the lower extremities, and no atrophy. (Tr. 92). He could ambulate independently without a limp.

Dr. Miller's impression was that claimant had no neurological deficit and no subjective findings of a neurologic problem. His MRI showed good hydration of the disc and no true herniated disc or nerve root pressure. Thus, he did not think that there was any significant disc injury which would be causing his symptoms. (Tr. 93). He did not recommend a diskogram.

**(2) Records from Lafayette Bone & Joint Clinic dated August 11, 1999 to August 7, 2001.** On August 11, 1999, claimant was seen by Dr. Cobb for lower back pain with radiation into the right leg. (Tr. 134). On examination, he had normal posture and full range of lumbar spine motion. (Tr. 135). DTRs were 2+ and equal of the patella and achilles. Motor and sensory function was normal. Straight leg raising was negative on the left, and positive on the right with hip and back pain.

Dr. Cobb's impression was post-traumatic lumbar pain syndrome, probable sprain/strain of the lumbar spine, a possible disc related condition, and a possible

3

annular injury. (Tr. 136). He recommended physical therapy and a Medrol Dosepak, followed by Vioxx and Lortab. (Tr. 136, 179). He stated that claimant was unable to work.

On October 18, 1999, claimant continued to complain of fairly significant pain. (Tr. 127). Dr. Cobb recommended discography at L4-5 and L5-1. Claimant was released to return to light work on January 7, 2000. (Tr. 126).

On May 30, 2000, claimant underwent discography at L3-4, 4-5, and 5-1, which was normal. (Tr. 124, 172-78). Dr. Cobb determined that claimant had reached maximum medical improvement, and referred him to Dr. Daniel Hodges for a functional capacity and return to work evaluation. (Tr. 122). On August 21, 2000, Dr. Hodges recommended EMG/NCV studies and a bone scan. (Tr. 120).

On September 13, 2000, claimant continued to complain of back pain. (Tr. 114). Dr. Cobb stated that "we have not really been able to identify the real anatomical basis of his pain." He recommended that claimant see Dr. Aprill.

On September 14, 2000, Dr. Hodges reported that EMG/NCV studies of the right lower extremity were consistent with right L5, L4 irritability without a clear cut radicular pattern. (Tr. 113, 181). He opined that this "indeed could perhaps be consistent with mild chemical radiculitis."

4

On October 25, 2000, Dr. Hodges reported that claimant seemed to be doing "reasonably well" and was getting moderate relief with medications. (Tr. 111). He released him to light duty with restrictions on bending, stooping, pushing, pulling and crawling.

Dr. Cobb reported on January 15, 2001 that claimant was doing better after having an epidural steroid injection by Dr. Aprill. (Tr. 108). He stated that claimant did not have a surgical problem and did not really need any additional treatment. Dr. Hodges concurred that claimant could pursue light duty work activities. (Tr. 107).

On April 9, 2001, Dr. Hodges reported that claimant was doing a bit better overall after having another injection. (Tr. 105). He was taking low dose hydrocodone 2.5 mg.

Claimant continued to complain of low back pain on June 12 and August 17, 2001. (Tr. 103-04). Dr. Hodges released him to go back to regular activities on June 12 because of financial issues. (Tr. 103).

**(3) Records from Abbeville General Hospital dated April 27, 2000 to December 26, 2001.** On December 26, 2001, claimant was treated for a kidney stone which passed in the emergency room. (Tr. 140-56).

**(4) Residual Functional Capacity (RFC) Assessment dated October 11, 2001.** Claimant was found to be able to lift/carry 20 pounds occasionally and 10

5

pounds frequently, stand/walk/sit about 6 hours in an 8-hour workday, and had unlimited push/pull ability. (Tr. 164). It was noted that his statements were partially credible. (Tr. 168).

**(5) Claimant's Administrative Hearing Testimony.** At the hearing on January 7, 2004, claimant was 37 years old. (Tr. 187). He testified that he was 5 feet 5 ½ inches tall and weighed 198 pounds, which was his normal weight. (Tr. 188). He had completed the eighth grade.

Claimant testified that he was currently working as a roustabout. (Tr. 189). He stated that he had worked as a roustabout for most of his life. Prior to that, he worked as a carrier for Ray Chevrolet driving and delivering parts. (Tr. 189-90). He stated that he had returned to work on July 16, 2001. (Tr. 191).

Claimant testified that he had stopped working after he became injured on the job on July 8, 1999. (Tr. 191). Afterwards, he stated that he had difficulty driving because of numbness in his legs. (Tr. 193). He stated that he would sit in one place for 15 minutes, then had to get up and walk around or lay down.

As to activities during that period, claimant stated that he watched television. (Tr. 194). He also socialized with friends and relatives and attended church. He reported that he needed assistance with getting out of the tub. (Tr. 195).

Regarding complaints during that time, claimant testified that he had lower back pain which extended into his legs. (Tr. 195). He stated that he had to learn to live with the pain. He reported that he did not feel any better when he had returned to work.

Claimant testified that he had taken hydrocodone and Vioxx, which did not cause any side effects. (Tr. 196-97). He was also taking blood pressure medication. (Tr. 202). He said that he had used a cane and a back brace. (Tr. 197). Additionally, he had attended physical therapy, which helped the pain while he was there, but returned immediately afterwards.

During this time, claimant reported that he could walk about a block or two. He stated that he could stand for 15 minutes. He also said that he could sit for 15 to 20 minutes before he started having back pain. He stated that he could lift 5 to 10 pounds. (Tr. 198). He did not report problems with reaching, gripping, or manipulating objects, memory or concentration, or environmental limitations. (Tr. 197-98).

Claimant reported that he had difficulty sleeping during this period. (Tr. 200). He also was irritable, depressed and frustrated. (Tr. 200-01). He stated that he had returned to work because he needed the money. (Tr. 204). Claimant's wife confirmed his testimony regarding his complaints. (Tr. 206-09).

7

**(6) The ALJ's findings are entitled to deference**. Claimant argues that the ALJ erred: (1) in failing to find that he met the listings at § 1.05(C), and (2) in assessing his credibility.

Initially, claimant asserts that his injuries met the criteria for disorders of the spine as set forth in § 1.04 of the Social Security listings (formerly section 1.05(C))[2], which provides as follows:

> 1.04 *Disorders of the spine*: (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.
>
> With:
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
> or
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
> or
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by

---

[2]Claimant argues that he met the listing for disorders of the spine at § 1.05C. Effective February 19, 2002, this listing is now found at § 1.04. With respect to claims that are pending judicial review, the Commissioner expects that the court's review will be made in accordance with the rules in effect at the time of the final administrative decision. 66 FR 58010, 58011 (Nov. 19, 2001). Thus, this claim will be reviewed under the listing at § 1.04.

8

chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §1.04.

Claimant argues that the ALJ should have found that he met this listing, because the evidence establishes that he had chronic lumbar spine injuries radiating into his lower extremity. (rec. doc. 8, p. 8). While the records confirm that claimant had sustained a back injury, claimant has not shown that he met the criteria under § 1.04. None of the physicians, including the treating specialists, Drs. Miller, Cobb and Hodges, found that he had compromise of the nerve root, motor loss (atrophy with associated muscle weakness or muscle weakness), or sensory or reflex loss. (Tr. 92, 114, 124, 135).

For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. (emphasis in original). *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 891, 107 L.Ed.2d 967 (1990). An impairment that manifests only some of those criteria, no matter how severely, does not qualify. *Id.* As claimant has not demonstrated that he met the criteria under § 1.04, the ALJ's finding that claimant's impairment did not meet the listing for spinal disorders is entitled to deference.

Next, claimant asserts that the ALJ erred in assessing his credibility regarding his limitations due to pain. Specifically, he argues that the ALJ "went beyond his

9

expertise in indicating that claimant should have shown drawn features, expressions of suffering, significant weight loss, and poor overall health." (rec. doc. 8, p. 10). He further contends that absent any indication by his doctors that he was exaggerating, there was no basis for the ALJ to question his credibility.[3]

While the ALJ determined that claimant had some pain, he found that claimant had not shown that it was so severe to preclude all work activity. (Tr. 18). He noted that claimant had received good results from physical therapy and epidural steroid injections. This finding is supported by the records from Dr. Cobb and Dr. Hodges, both of whom indicated that claimant had responded well to conservative treatment. (Tr. 105, 107-08, 111). Additionally, the ALJ cited Dr. Cobb's opinion that claimant was not a surgical candidate, which fact is also supported by the record. (Tr. 108). Accordingly, the ALJ's findings are entitled to deference.

Further, contrary to claimant's argument, the ALJ properly observed that claimant did not have the stigmata frequently observed in a patient who suffers from

---

[3]Claimant also questions the ALJ's notation that the hydrocodone which he had taken was for mild to moderate pain, rather than moderate to severe pain for which that medication is prescribed. PHYSICIAN'S DESK REFERENCE, 2005 WL 1158839 (2005); (rec. doc. 8, p. 11; Tr. 18). However, the undersigned finds that any such error was harmless. The records reflect that the hydrocodone was given at a low dose, which does not suggest that claimant was having moderately severe pain. (Tr. 105). The harmless error rule is appropriate when "remand would be an idle and useless formality." *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n. 6, 89 S.Ct. 1426, 1430, 22 L.Ed.2d 709 (1969). The Fifth Circuit has applied this rule in social security disability cases. *Frank v. Barnhart* 326 F.3d 618, 622 (5th Cir. 2003).

constant, unremitting severe pain which is totally unresponsive to therapeutic measures. (Tr. 18). It is well settled that the absence of objective factors indicating the existence of severe pain -- such as limitations in the range of motion, muscular atrophy, or impairment of general nutrition, could itself justify the ALJ's conclusion. *Hollis v. Bowen*, 837 F.2d 1378,1384 (5th Cir. 1988). Accordingly, the ALJ's assessment as to claimant's credibility is entitled to great deference. *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000).

Based on the foregoing, it is my recommendation that the Commissioner's decision be **AFFIRMED** and that this action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN TEN (10) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE**

TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR. *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).

Signed this 19 day of July, 2005, at Lafayette, Louisiana.

C. Michael Hill
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE

COPY SENT:
DATE: 7-19-05
BY: ___
TO: TLM
CMH